IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| MALCOLM ADAMS, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Defendant. ) | CIVIL ACTION NO. 5:11-0660 |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is the United States' Motion for Summary Judgment (Document No. 21.), filed on February 8, 2013. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 23.) On March 5, 2013, Plaintiff filed his Response in Opposition to the United States' Motion for Summary Judgment. (Document No. 24.) The United States filed its Reply on March 8, 2013. Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion for Summary Judgment should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On September 26, 2011, Plaintiff, acing *pro se* and an inmate at FCI Beckley, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA],

28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document No. 1.) Plaintiff names the United States as the Defendant. (Id.) Plaintiff alleges that as a result of prison employees' negligence, he suffered an injury to his knee after slipping and falling on a sheet of ice at FCI Beckley on February 4, 2010. (Id.) Plaintiff explains that "[i]nmates at SPC Beckley are provided with three routes by which they are able to travel on foot from the Evergreen housing unit to the dining facility: two concrete sidewalks and one gravel pathway commonly referred to as 'the tree area.'" (Id., p. 2.) Plaintiff states that "[b]oth sidewalks are on a steeper incline than the gravel pathway," but "there are no drainage systems on either sidewalk." (Id.) Plaintiff asserts "[o]n the evening of February 3, 2010, SPC Beckley experienced a snow shower that resulted in the accumulation of several inches of snow on the ground by the time the breakfast meal was announced on February 4, 2010." (Id.) Plaintiff

---

[1] The FTCA authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. Federal inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *See Carlson v. Green*, 446 U.S. 14, 21-23, 100 S.Ct. 1468, 1472-74, 64 L.Ed.2d 15 (1980). By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

acknowledges that "[b]efore releasing the inmates for the morning meal, inmates working the Snow Crew detail were instructed to spread salt on the concrete sidewalks." (Id., p. 3.) Plaintiff explains that when returning to his assigned housing unit after morning meal, he "elected to walk along the concrete sidewalk nearest his residence." (Id.) Plaintiff alleges that "[d]uring the time that had elapsed between the application of salt to the sidewalk and the conclusion of the morning meal, melted ice water flowing from the top of the incline had re-frozen before reaching the bottom, leaving a dangerous patch of unavoidable ice." (Id.) Plaintiff claims that he "found the path to the Evergreen unit via the sidewalk to be difficult and slippery, causing him to lose his footing on a number of occasions." (Id., p. 4.) Plaintiff asserts that "[a]pproximately 30 minutes later, the food service detail was instructed to return to the dining facility to complete their assigned tasks." (Id.) Plaintiff acknowledges that he "elected to return to work via the gravel pathway in hopes that it would provide a safer route." (Id.) Plaintiff alleges that "no salt had been applied to the gravel walkway on the morning of February 4, 2010, at any time prior to 7:30 a.m." (Id.) Plaintiff contends that he "slipped on the sheet of ice that covered the gravel pathway," which caused "his right leg to bend under his body and to the side, absorbing the full impact of the landing." (Id.) Plaintiff asserts that "[a]lmost immediately following [his] injury, an inmate - Daniel Boone, #19799-058 - was instructed by Staff Counselor John Grimes to spread salt on the pathway 'before anyone else gets hurt.'" (Id.) Plaintiff contends that on February 18, 2010, "attending Physician Zyed Zahir noted that Mr. Adams' right patellar tendon (connecting the kneecap to the lower leg) was ruptured and that there was a hemarthrosis of the knee (an accumulation of blood within the knee joint) which was quantified at a 3+." (Id., p. 5.) Plaintiff contends that surgery was performed later that day to "repair the quadriceps mechanism and patellar tendon." (Id.) Plaintiff claims that the "injury was both

3

extensive and difficult to repair." (Id., p. 6.) Plaintiff states that he "remained in the hospital for two days following the surgery and remained in a cast for four weeks followed by an immobilizer afterwards." (Id.) Plaintiff alleges that he "now walks with a pronounced limp that is expected to worsen with age." (Id., p. 10.) As relief, Plaintiff seeks "one million dollars." (Id., p. 7.)

On October 17, 2011, Plaintiff paid the $350.00 filing fee. (Document No. 3.) By Order entered on March 26, 2011, the Court directed the Clerk to issue process by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the United States as specified in Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Document No. 5.) The Summons was returned executed. (Document Nos. 8 and 9.) On May 9, 2012, the United States filed its Answer. (Document No. 10.) By Scheduling Order entered on September 17, 2012, the undersigned set forth specific dates for the completion of discovery and the filing of any dispositive motions. (Document No. 12.)

On February 8, 2013, the United States filed its Motion for Summary Judgment and Memorandum in Support. (Document Nos. 21 and 22.) The United States argues that Plaintiff's complaint should be dismissed because (1) "Plaintiff's tort claims are barred by the Inmate Accident Compensation Act, 18 U.S.C. § 4126," and (2) "Plaintiff cannot show that the Bureau of Prisons was negligent." (Document No. 22, pp. 3 - 8.) As Exhibits, the United States attaches the following: (1) The Declaration of James Pitts (Document No. 21-1.); (2) The "Federal Bureau of Prisons Injury Report – Inmate" (Document No. 21-2, p. 2.); (3) The "Injury-Lost-Time Follow-Up Report" (Id., p. 4.); (4) The Deposition Transcript of Malcolm Adams (Document No. 21-3.); and (5) A copy of Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008) (Document No. 21-4.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff advising him of his right to file a response to the United States' Motion for Summary Judgment.

(Document No. 23.) On March 5, 2013, Plaintiff filed his Response in Opposition. (Document No. 24.) First, Plaintiff contends that the United States' Motion for Summary Judgment should be denied because "the Defendant's claim that the injury was work related, at best, raises a genuine dispute of material fact." (Id.) Next, Plaintiff claims that "Defendant has not conclusively demonstrated an absence of negligence on the part of the Bureau of Prisons." (Id.) As an Exhibit, Plaintiff attaches a copy of Plaintiff's Injury Assessment Encounter dated February 4, 2010 (Id., pp. 16 - 17.)

On March 8, 2013, the United States filed its Reply. (Document No. 25.) First, the United States argues that Plaintiff fails to raise a genuine issue of material fact and his "reliance on the allegations of his complaint is legally insufficient." (Id., p. 1.) Next, the United States contends that "Plaintiff cannot challenge in this action his award of compensation pursuant to the Inmate Accident Compensation Act (IACA), 18 U.S.C. § 4126. That award bars Plaintiff's tort action." (Id.)

## **THE STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

5

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

### 1. Inmate Accident Compensation Act:

The Inmate Accident Compensation Act [IACA] provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "Work location" is defined by the BOP as "any place that inmate is authorized to be performing his assignment." BOP Program State 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while

working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, *supra* 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211. Section 301.301(c), however, provides that "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)." 28 C.F.R. § 301.301(c).

In its Motion for Summary Judgment, the United States argues that Plaintiff cannot recover under the FTCA because his "claims are covered by – and have been compensated under – the IACA as he was injured while working at FCI Beckley." (Document No. 22, p. 3.) The United States argues that Plaintiff's injury was work-related. (Id.) The United States explains that Plaintiff was working in the kitchen, but was directed to return to his cell temporarily because his "supervisor was called away from the kitchen and prisoners are not allowed in the kitchen unsupervised." (Id., p. 4.) The United States notes that Plaintiff was "still 'on the clock' for his services in the kitchen and was still being paid." (Id.) The United States, therefore, argues that the "coming and going" exception does not apply because "Mr. Adams was required to return to his cell momentarily in order to comply with security procedures, and he still remained 'on the clock.'" (Id.) Finally, the United States notes that "the Institution Safety Committee deemed Mr. Adams' accident a work-related injury." (Id.)

In his Response, Plaintiff argues that his injury was not work-related. (Document No. 24, pp. 5 - 8.) Plaintiff argues that the injury suffered "did not occur during any work activity being performed in connection with the operation of the institution, nor was it caused by the actual performance of his assignment as head cook." (Id., p. 5.) Plaintiff claims that the "the report -

7

generated approximately thirty-four months after the accident occurred – is contradicted by the medical report generated on the day of the accident." (Id., p. 6.) Plaintiff notes that "the attending medical service provider made the specific notation that the accident was not work related." (Id.) Plaintiff states that the "Institution Safety Committee report was not generated [until] twenty (20) months following the commencement of the action currently before this Court." (Id.) Finally, Plaintiff argues that his injury was not work related because the injury was sustained while he was away from his work location. (Id., pp. 7 - 8.)

Courts have broadly construed the term "work-related" injury. In Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the-clock and being paid.) In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80(finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). Courts are generally unwilling to determine that an inmate's injury is work-related absent evidence that the injury occurred during work activities, on the work site, or while the inmate was "on-the-clock." See Goforth v. United States, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident."); Codianni-Robles v. United States, 2005 WL 2098837 * 2 (D.Conn. Aug. 29, 2005)(the District Court denied

the government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.").

Based upon a review of the facts, the undersigned finds that Plaintiff's injury was "work-related." The record reveals that Plaintiff works as the head cook in the prison cafeteria and reports to the kitchen at approximately 4:30 a.m. On the morning of his injury, Plaintiff reported for work around 4:45 a.m. and around 7:00 a.m. the work supervisor instructed Plaintiff to return to his housing unit because the supervisor was called away from the kitchen.[2] (Document No. 21-3, pp. 6 - 7.) The security procedure required that Plaintiff return to his cell because inmates are not allowed to be in the kitchen unsupervised. (Id., pp. 7 and 15.) Approximately thirty minutes later, Plaintiff was instructed to return to the kitchen. (Id., p. 7.) On his way back to the kitchen, Plaintiff slipped and fell on the gravel pathway injuring his knee. (Id.) James Pitts, Safety Manager at FCI Beckley, declares that "[t]he injury report noted that inmate Adams' job assignment was as a cook working from 4:30 a.m. until 12:30 p.m. on February 4, 2010." (Document No.21-1, p. 1.) The

---

[2] During his Deposition, Plaintiff stated as follows (Document No. 21-3, pp. 6 - 7.):

> February the 4th in the morning I reported to work approximately about a quarter til five in the morning. And then we prepared the breakfast meal and started on the lunch meal. Mr. Saintclair, the kitchen supervisor, was called to do A and O somewhere around seven o'clock. And so he told us to go back up to the unit and wait to be called back down after he was done with the A and O, because he didn't have anybody to relieve him at the kitchen.
> And so, all the kitchen workers left the unit. I proceeded up the sidewalk and I almost slipped and fell two or three times going up the sidewalk where they had melted the ice. The water had ran down the sidewalk and it re-froze back. It snowed extensively that night.
> And so, I went to the unit. And when they called us back down, instead of trying to go back down the sidewalk, I took the gravel pathway back to the kitchen and I slipped and fell on the gravel pathway.

record reveals that after Plaintiff left the kitchen as instructed by his work supervisor, Plaintiff was instructed as part of his job assignment to return to the kitchen. It is undisputed that Plaintiff was "on-the-clock" and being paid while he was temporarily away from the kitchen. Thus, the undersigned finds that Plaintiff's injury was work-related. See Baynes, 302 Fed.Appx. at 335-36; Payton, 2001 WL 3240487 at * 3. Although Plaintiff argues that the facts of his case are similar to Goforth, the undersigned notes that there was no indication that Ms. Goforth was "on-the-clock" at the time of her injury or that she was instructed by her work supervisor to leave and return to a specific work area. Additionally, Plaintiff argues that the "Health Service Clinical Encounter" report dated February 4, 2010, indicates that his injury was not "work-related." (Document No. 24, p. 16.) Statements made on medical records and Requests for Administrative Remedies, however, "are not conclusive as to whether the plaintiff's injuries were work-related under the governing regulations." Codianni-Robles, 2005 WL 2098837 at * 2. Based on the foregoing, the undersigned recommends that the District Court grant the United States' Motion for Summary Judgment.

    **2.**    **Negligence:**

Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claim of negligence. In its Motion for Summary Judgment, the United States first argues that the BOP's actual or constructive knowledge of the snow on the ground is irrelevant because (1) "the BOP fulfilled its reasonable duty of care to Mr. Adams by maintaining walkways that were as free from snow as reasonably possible," and (2) "Mr. Adams had actual knowledge of the walkways and their condition." (Document No. 22, p. 6.) Next, the United States asserts that "the BOP has no duty to remove snow during a snow storm." (Id.) The United States claims that "because Mr. Adams admitted that it was snowing 'all that morning' the morning he fell, the BOP had no duty to clear

the snow." (Id., p. 7.) The United States further contends that "even though they have no duty to do so, Mr. Adams openly admitted that when it snows at FCI Beckley, the BOP is diligent in its efforts to remove snow from the walkways of the prison." (Id.) Third, the United States asserts that Plaintiff "admitted that on the particular day of his accident, the BOP cleared off the snow and treated the sidewalk with salt prior to his fall." (Id.) The United States, therefore, concludes that the BOP "fulfilled any reasonable duty it may have had to Mr. Adams by repeatedly clearing snow from walkways throughout the FCI Beckley campus when it snowed, including the morning prior to his accident." (Id.) Fifth, the United States claims it had no duty to treat the specific path that Plaintiff decided to take on the morning of his fall. (Id., p. 8.) The United States explains that "the shortest route between his housing unit and kitchen was already cleared of snow and treated that morning before he fell." (Id.) Additionally, the United States contends that "[t]he path Mr. Adams took was not a sidewalk, but rather an informal gravel path between trees and he knew before traversing it that, unlike the sidewalk, it had not been treated." (Id.) Thus, the United States argues that Plaintiff made the decision to take the gravel path rather than the treated sidewalk and he "was fully aware of the conditions he faced the morning of his accident." (Id.) Therefore, the United States concludes that the "BOP cannot be held responsible if Mr. Adams, of his own volition and in awareness of the conditions on the ground, chose to take an untreated gravel and dirt path rather than a treated sidewalk." (Id., p. 9.)

In Response, Plaintiff argues that a "rational trier of fact could find the BOP negligent." (Document No. 24, p. 9.) Plaintiff contends that "BOP staff were aware of (1) the hazardous conditions caused by the faulty design of the sidewalks . . . and (2) that inmates are forced to travel along these paths throughout the day or face disciplinary action." (Id., p. 10.) Plaintiff asserts that

11

"this knowledge . . . placed a heavier burden on BOP staff to exercise a duty of care to guard against injury." (Id., pp. 10 - 11.) Plaintiff claims that "Defendant breached the duty of care owed to the Plaintiff to use due and proper care to see that its sidewalks were reasonably safe for persons exercising ordinary care and prudence" by (1) failing to "correct the defect that allows water to travel along the sidewalks during freezing conditions," and (2) failing to "attempt to clear the sidewalks after the morning meal." (Id., p. 11.) Although Plaintiff stated during his deposition that "it was snowing all that morning," Plaintiff contends that "[t]his statement does not provide conclusive proof that it was actually snowing during the period of time in question, i.e, after breakfast and before Plaintiff was instructed to return to his housing unit." (Id.) Plaintiff further claims that his "candor in agreeing that the Defendant normally makes an attempt to clear the walkways lends credence to the assertion that the BOP is aware of its duty of care owed to the inmates at FPC Beckley and the negligent failure to do so on the morning in question." (Id., p. 12.) Next, Plaintiff contends that his "statement that 'despite any reasonable amount of care, the sidewalks retain a certain amount of danger than an individual may slip on unseen ice' does not relieve the BOP of the responsibility to make an attempt to maintain safe walkways." (Id.) Plaintiff asserts that his "observation illuminates the fact that – due to the faulty design of the sidewalks – negligence on part of the BOP staff turns an already potentially hazardous walkway into an impassable obstruction." (Id.) Finally, Plaintiff argues that he did not have a duty to discover open and obvious dangers. (Id., p. 13.) Plaintiff explains that "this holding assume that the invitee has the option not to travel the path once the hazard is discovered, such is not the case in this instance." (Id.) Plaintiff claims that "[r]egardless of the hazardous conditions Mr. Adams faced, he was nevertheless required to travel the path or suffer disciplinary action." (Id.) Plaintiff contends that if a duty was

imposed upon him, "that duty could only be described as one that required him to find the safest available route." (Id., p. 14.) Plaintiff asserts that the gravel pathway was the safest route because it "offered better traction than ones containing sheets of ice on an inclined sidewalk." (Id.) Plaintiff concludes that "[t]he fact that the tree area provided no safer means of reaching his destination means only that the Defendant's negligence was unavoidable." (Id.)

"[T]he mere happening of an accident is legally insufficient to establish liability." See McMillion v. Selman, 193 W.Va. 301, 303, 456 S.E.2d 28, 30 (1995). There must be evidence in this case of alleged negligence, i.e., that the United States owed Plaintiff a duty to take care and breached it through some act, or omission to act, as should have been reasonably expected to result in Plaintiff's fall and produce Plaintiff's injury thereby causing his fall and injury. In other words, Plaintiff must point to facts which indicate that the United States' negligence was the proximate cause of his fall and injury. See Judy v. Grant County Health Dep't, 210 W.Va. 286, 291 - 92, 557 S.E.2d 340, 345 - 46 (2001). Generally, under West Virginia law the *sine qua non* of premises liability is "foreseeability that harm may result [to a person lawfully upon the premises] if [care] is not exercised." Mallet v. Pickens, 206 W.Va. 145, 522 S.E.2d 436 (1999). The West Virginia Supreme Court of Appeals stated as follows in Mallet, 206 W.Va. at 446 - 447, 522 S.E.2d at 155 - 156:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of a general nature of that suffered was likely to result?
> \* \* \*
> We hold that, in determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of the injury; (3) the time, manner, and circumstances under which the injured party entered the premises; (4) the normal or expected use made

13

of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

A landowner's duty to remove snow and ice from its premises is a duty to "use due and proper care to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence." Eichelberger v. United States, 2006 WL 533399 (N.D.W.Va. Mar. 3, 2006), citing Walker v. Memorial Hospital, 187 W.Va. 5, 12, 45 S.E.2d 898, 901-02 (1948). A person lawfully upon the premises of another, assumes all "normal, obvious or ordinary risks attendant on the use of the premises." There will therefore be no premises liability for injuries as a consequence of hazards which are "obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." Estate of Helmick v. Martin, 192 W.Va. 501, 505, 453 S.E.2d 335, 339 (1994), quoting Burdette v. Burdette, 147 W.Va. 313, 318, 127 S.E.2d 249, 252 (1962). Although a person has a duty to exercise ordinary care to avoid hazards, "a person is not bound to be continuously looking under penalty that if he fails to do so and is injured his own negligence will defeat recovery of damages sustained." Wise v. Crown Construction Co., 164 W.Va. 393, 264 S.E.2d 463 (1980); also see Rankin v. S.S. Kresge Co., 59 F. Supp. 613, 618 (N.D.W.Va. 1945)(stating that a customer "has the right to assume that such storekeeper has discharged his duty in the exercise of reasonable and ordinary care, to keep the premises...in a reasonably safe condition for travel [and] [h]e is not required to look constantly at the floor...in an effort to discover and avoid slipping upon foreign substances"). Increased care, however, is required of a "foot-traveler" in icy conditions. Eichelberger, 2006 WL 533399 at *3. "The mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city [or other landowner] liable for damages occasioned thereby." Id.

The Court finds that there are no genuine issues of material fact. On February 4, 2010, at

approximately 4:45 a.m., Plaintiff traveled from Evergreen Housing Unit to the kitchen where he works as the head cook. (Document No. 21-3, pp. 6 - 7.) There was "a lot" of snow, approximately two and half feet, on the ground because it had been snowing for several days. (Id., p. 15.) Plaintiff traveled to the kitchen by use of the sidewalk, which had not been treated that morning. (Id., p. 17.) At approximately 5:00 a.m., the sidewalks were treated. (Id.) Plaintiff stated that breakfast is served at 6:00 a.m. and the sidewalks were treated "prior to everybody coming out to breakfast." (Id.) Plaintiff explained that the BOP "gets the snow crew to come out there and it's according to what CO is working, but they won't let them come out of the unit usually until the sidewalk is completely cleared." (Id.) At approximately 7:00 a.m., Plaintiff was instructed to return to Evergreen Housing Unit. (Id., pp. 17 - 18.) Plaintiff returned to the Evergreen Housing Unit by using the sidewalk. (Id., p. 18.) Plaintiff explained that he "almost slipped and fell two or three times going up the sidewalk where they had melted the ice" and "the water had ran down the sidewalk and it re-froze back." (Id., pp. 7 and 18.) Approximately thirty minutes later, Plaintiff was instructed to return to the kitchen. (Id., p. 18.) Plaintiff explained that he took the gravel pathway when returning to the kitchen because he "had trouble getting up the sidewalk." (Id.) Plaintiff stated that he felt he "was taking a safer route by going through the gravel pathway" because the "gravel pathway starts off at a slight incline but then it levels off." (Id.) Plaintiff, however, acknowledged that "the sidewalk is shorter than the gravel path if you're going to the kitchen" and the gravel pathway had not been treated. (Id., pp. 13 and 15.) Plaintiff stated that the snow on the gravel pathway had been stomped down and there was approximately two or three inches of snow on the gravel pathway. (Id.) Plaintiff slipped and fell on the gravel pathway injuring his knee. (Id., p. 7.)

Based on the foregoing, the Court finds that the undisputed evidence indicates that the

15

weather conditions were changing on the morning of February 4, 2010. (Document No. 23-1, pp. 15 - 16.) Plaintiff acknowledged that "it was snowing all that morning." (Id., p. 16.) Plaintiff stated that although the BOP had treated and removed snow from the sidewalk at approximately 5:00 a.m., water ran down the sidewalk causing ice to form by 7:00 a.m. (Id., pp. 7, 17 - 18.) Plaintiff traveled on the sidewalk at approximately 7:00 and knew the icy condition of the sidewalk. (Id.) Approximately thirty minutes later, Plaintiff chose to travel on the gravel pathway which had not been treated and was snow covered. (Id., p. 18.) Thus, it was at least as foreseeable to Plaintiff, who had traveled on the treated sidewalk and knowingly chose to travel on the untreated gravel pathway, as it was foreseeable to the staff at FPC Alderson that the premises could be icy. Assuming that the sidewalk and gravel pathway were ice covered, the Court must consider whether Plaintiff exercised ordinary care and prudence under the circumstances. A landowner is not required to warn invitees of open and obvious dangers. Harpers v. McShain, 394 F.2d 480, 481 (4th Cir. 1968)(In West Virginia, an invitee entering the premises of another has the duty to discover open and obvious dangers.) Thus, the United States argues that Plaintiff "had actual knowledge of the walkways and their condition." (Document No. 22, p. 6.) Plaintiff was aware that it had snowed during the overnight hours and there was a lot of snow on the ground on the morning of his injury. (Document No. 23-1, pp. 7 and 15.) Approximately two and half hours prior to his injury, Plaintiff twice traveled between his housing unit and the kitchen. (Id., pp. 17 - 18.) Plaintiff acknowledges that he traveled on the gravel pathway knowing it was untreated and a longer route to the kitchen. (Id., p. 13 and 15 - 16.) Plaintiff described the condition of the gravel pathway as being snow covered and "[w]here they stomped it down, it probably wasn't maybe two or three inches" of snow. (Id., p. 16.) Thus, Plaintiff's statement indicates that the condition of the gravel pathway was obvious.

16

Additionally, there is no evidence that other inmates fell on the gravel pathway due to icy conditions on the morning of February 4, 2010. The Court, therefore, concludes that the icy condition of the gravel pathway was open and obvious and Plaintiff failed to exercise ordinary care in discovering the icy condition. See Eichelberger, 2006 WL 533399 at *3(stating that increased care is required of a "foot-traveler" in icy conditions). Furthermore, the Court concludes that the icy condition of the walkways was the result of continuous snow and a landowner has no duty to remove ice or snow during the pendency of a storm. Phillips v. SuperAmerica Group, Inc., 852 F.Supp. 504, 506 (N.D.W.Va. 1994)(holding that a gas station owner owed no duty to invitee to remove snow and ice from premises during pendency of snowstorm, and was not liable for injuries suffered by invitee who slipped and fell).

      Even assuming prison officials owed Plaintiff a duty to remove the ice from the premises, the Court concludes that prison officials used reasonable care under the circumstances in their maintenance of the sidewalks. Plaintiff acknowledges that the BOP is generally diligent in its effort to remove snow from the walkways. (Document No. 21-3, p. 21.) Plaintiff stated that "they clear the sidewalk prior to breakfast" and "they make sure all the snow is off of it" before they allow inmates out of their units. (Id., pp. 16 -17.) Plaintiff explained that "[t]hey clear periodically through the day," "[u]sually when people are going to be moving back and forth and stuff they're going to be clearing it." (Id., pp. 17 - 18.) The evidence reveals that snow was removed from the sidewalks and the sidewalks were treated with salt prior to Plaintiff's injury. (Id.) Plaintiff acknowledges that he chose to travel on the gravel pathway knowing it was untreated and a longer route to the kitchen. (Id., pp. 13, 16 -17.) Plaintiff admits that it was his decision to take the untreated gravel pathway instead of the treated sidewalk. (Id., p. 19.) Accordingly, considering the Mallet factors – the

17

foreseeability to the staff at FCI Beckley and Plaintiff that Plaintiff's injuries would occurred; the nature of Plaintiff's injuries; the time, manner and circumstances under which they occurred; and the intended use of the premises where Plaintiff was injured – and the responsibility of Plaintiff as legally established, the Court concludes that the staff at FCI Beckley did not breach the duty to use care in the maintenance of the premises and the United States cannot therefore be held liable under the FTCA. The undersigned, therefore, recommends that the United States' Motion for Summary Judgment be granted.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the United States' Motion for Summary Judgment (Document No. 21.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 24, 2013.

R. Clarke VanDervort
United States Magistrate Judge