IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MALCOLM ADAMS,

                Plaintiff,

v.                                      CIVIL ACTION NO.   5:11-cv-00660

UNITED STATES OF AMERICA,

                Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the United States' Motion for Summary Judgment (Document 21), attached exhibits, memorandum in support (Document 22), Plaintiff's Response in Opposition (Document 24), the United States' Reply (Document 25), Plaintiff's Complaint (Document 1), and the entire record. By Standing Order (Document 2) entered September 26, 2011, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On July 24, 2013, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R") (Document 27), wherein he recommended that this Court grant the United States' Motion for Summary Judgment, dismiss Plaintiff's Complaint, and remove this matter from the docket. Plaintiff timely filed his objections to the PF&R on August 9, 2013. (Document 29).

### FACTUAL AND PROCEDURAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in detail the parties' previous and current motions. The Court now incorporates by reference those facts and procedural history. To provide context for the ruling herein, the Court provides the following summary.

On September 26, 2011, Plaintiff, acting *pro se*, filed his Complaint against the United States claiming entitlement to relief pursuant to the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b) and 2671, *et seq.* (Document 1). Plaintiff alleges that on February 4, 2010, due to prison employees' negligence, he slipped and fell on a sheet of ice at FCI Beckley, injuring his knee. (*Id.*) Plaintiff states that he is currently an inmate at FCI Beckley housed in the Evergreen building, and that on February 4, 2010, he was assigned the morning work detail at the dining facility. (*Id.* at 2.) He explains that "[i]nmates at SPC [(Satellite Prison Camp)] Beckley are provided with three (3) routes by which they are able to travel on foot from the Evergreen housing unit to the dining facility: two (2) concrete sidewalks and one (1) gravel pathway." (*Id.*) He further states that the sidewalks are on a steeper incline than the gravel pathway but there are "no drainage systems on either sidewalk." (*Id.*) He asserts that it snowed on the evening of February 3, 2010, and that there were "several inches of snow on the ground by the time the breakfast meal was announced on February 4, 2010." (*Id.*) He states that "[b]efore releasing the inmates for the morning meal, inmates working the Snow Crew detail were instructed to spread salt on the concrete sidewalks." (*Id.* at 3.) Plaintiff alleges that after breakfast, the food service officer on duty "made an announcement that he was required to speak at the Admissions and Orientation class at or about 7:00 a.m., and instructed all inmates working the morning detail to vacate the dining

facility until further notice." (*Id.*) Plaintiff states that "[a]s instructed," he returned to his housing unit and "elected to walk along the concrete sidewalk nearest his residence." (*Id.*) Plaintiff contends that "[d]uring the time that had elapsed between the application of salt to the sidewalk and the conclusion of the morning meal, melted icewater [sic] flowing from the top of the incline had re-frozen before reaching the bottom, leaving a dangerous patch of unavoidable ice." (*Id.*) Plaintiff contends that he found that sidewalk "to be difficult and slippery, causing him to lose his footing on a number of occasions." (*Id.* at 4.) Plaintiff states that "[a]pproximately thirty (30) minutes later, the food service detail was instructed to return to the dining facility to complete their assigned tasks."   Plaintiff states that he "elected to return to work via the gravel pathway in hopes that it would provide a safer route."   Plaintiff alleges that no salt had been applied to the gravel pathway prior to 7:30 a.m. that morning.

Plaintiff contends that he "slipped on the sheet of ice that covered the gravel pathway." (*Id.*) He asserts that when he fell, "his right leg bent under his body and to the side, absorbing the full impact of the landing."   Plaintiff alleges that "[a]lmost immediately" after his injury, "an inmate – Daniel Boone, #19799-058 – was instructed by Staff Counselor John Grimes to spread salt on the pathway 'before anyone else gets hurt.'" (*Id.*) Plaintiff states that he was taken to the hospital on February 18, 2010, and underwent surgery "to repair the quadriceps mechanism and patellar tendon." (*Id.* at 5.) He alleges that "the injury was both extensive and difficult to repair." (*Id.* at 6.) Plaintiff states that he remained in the hospital for two days following the surgery and was in a cast for four weeks "followed by an immobilizer afterwards."   Plaintiff seeks one million dollars as relief.

On February 8, 2013, the United States filed its Motion for Summary Judgment (Document 21), attached exhibits, and memorandum in support (Document 22).[1] The United States asserts two grounds for dismissal of Plaintiff's Complaint. First, it argues that Plaintiff's tort claims are barred by the inmate Accident Compensation Act, ("IACA") 18 U.S.C. § 4126. (Document 21 at 1.) In support, the United States contends Plaintiff's injury was work-related, and thus, his claims are covered by the IACA, not the FTCA. (*Id.* at 3-4.) Second, it argues that Plaintiff cannot show that the Bureau of Prisons ("BOP") was negligent. (Document 21 at 1.) In support, the United States contends that even though the BOP had no duty to remove snow from the walkway during a snowstorm, it did clear snow off the sidewalk and treated it with salt prior to Plaintiff's accident. (*Id.* at 6-7.) The United States also asserts that it had no duty to treat the gravel pathway that morning because the sidewalk was the shortest route between his housing unit and the kitchen, and it had already been cleared of snow and treated with salt. (*Id.* at 8.) Moreover, the United States argues that it cannot be held liable because Plaintiff was aware that the gravel pathway was covered in snow and had not been treated, but nevertheless independently decided to take that path. (*Id* at 8-9.)

On March 5, 2013, Plaintiff filed his Response in opposition (Document 24). Plaintiff argues that the United States' motion should not be granted for two reasons. First, he asserts that "the Defendant's claim that the injury was work related, at best, raises a genuine dispute of material fact." (*Id.* at 1.) In support, he contends that his injury "did not occur during any work activity being performed in connection with the operation of the institution, nor was it caused by

---

1  The Exhibits include: (1) The Declaration of James Pitt (Document 2101); (2) The Federal Bureau of Prisons Injury Report – Inmate (Document 21-2 at 2); (3) The Injury-Loss-Time Follow-Up Report (*Id.* at 4); (4) The Deposition Transcript of Malcolm Adams (Document 21-3); and (5) A copy of *Baynes v. United States,* 302 Fed.Appx. 334 (6th Cir.2008). (Document 21-4.)

the actual performance of his work assignment as head cook." (*Id.* at 5.) In further support, he attaches a "Bureau of Prisons Health Services Clinical Encounter" form dated February 4, 2010, in which a medical provider noted that his injury was not work-related. (*Id.* at 16-17.) Second, he argues that "the Defendant has not conclusively demonstrated an absence of negligence on the part of the [BOP]." (*Id.* at 1.) In support, he contends that BOP staff knew the sidewalk did not have a drainage system which allowed water to flow down the sidewalks, but still forced inmates to walk along those paths. (*Id.* at 10.)  Plaintiff argues that this knowledge "placed a heavier burden on [them] to exercise a duty of care to guard against injury." (*Id.* at 10-11.) He also contends that his testimony that "it was snowing all morning" does not prove that it was snowing during the relevant time period. (*Id.* at 11.) Plaintiff also argues that he did not have a duty to discover open and obvious dangers because he was required to travel on the path or suffer disciplinary action. (*Id.* at 13.)

On March 8, 2013, the United States filed its Reply (Document 25).  First, the United States argues that Plaintiff has not raised a genuine issue of material fact in opposition to its motion for summary judgment because "Plaintiff's reliance on the allegation of his complaint is legally insufficient." (*Id.* at 1.) Second, the United States asserts that "Plaintiff cannot challenge in this action his award of compensation pursuant to the Inmate Accident Compensation Act (IACA), 18 U.S.C. § 4126 [because] [t]hat award bars Plaintiff's tort action." (*Id.*)

## *STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or

5

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

## APPLICABLE LAW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U .S. at 248.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322-23.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. In other words, "the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, 2012 WL 2130908, at *3 (4th Cir. June

6

13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). The parties must support their factual assertions by citing to particular materials in the record, including documents, affidavits, and declarations. Fed.R.Civ.P. 56(c)(1)(A).

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### *DISCUSSION*

#### A.  *The Magistrate's PF&R*

The Magistrate Judge found that the United States' Motion for Summary Judgment should be granted for two reasons.   First, Plaintiff's injury was "work related," and therefore, is covered by the Inmate Accident Compensation Act ("IACA"), not the FTCA.   Second, the staff at FCI Beckley was not negligent because the icy condition of the gravel pathway was open and obvious and a landowner has no duty to remove snow or ice from the premises during the pendency of a snowstorm.   Therefore, he found that the United States cannot be liable under the FTCA.

#### i.     *Inmate Accident Compensation Act*

The Magistrate Judge found that Plaintiff's injury was "work related," and therefore, he is barred from recovering under the FTCA. (PF&R at 6-10.) The Magistrate Judge recognized that federal prisoners cannot recover under the FTCA for work-related injuries because the Prisons Industries Fund, 18 U.S.C. §4126, provides the exclusive means for compensation for injuries

incurred in work-related incidents. (*Id.* at 6) (citing *United States v. Demko,* 385 U.S. 149 (1966)). The IACA, 18 U.S.C. §4126(c)(4), provides for compensation to inmates "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." (PF&R at 6) (quoting *Aston v. United States,* 625 F.2d 1210, 1211 (5th Cir.1980) (per curiam). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). However, "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area." 28 C.F.R. § 301.301(c).   The BOP defines "work location" as "any place that inmate is authorized to be performing his assignment." BOP Program Statement 1600.09.

The Magistrate Judge noted that courts have broadly construed the term "work-related" injury. (PF&R at 8-9) (citing *Baynes v. United States,* 302 Fed.Appx. 334 (6th Cir.2008) (injuries sustained while plaintiffs were traveling to a job site was work-related because plaintiffs were on-the-clock and their injuries were "proximately caused by the actual performance of the inmate[s'] work assignment[s]"); *Payton v. United States,* 2011 WL 3240487 (E.D.N.C. 2011) (injury suffered while plaintiff was traveling to lunch was work-related because the injury occurred while plaintiff was still on-the-clock and being paid); *Wooten v. United States,* 437 F.2d 79 (5th Cir.1971) (injury suffered by an inmate on an elevator on his way to lunch was a work-related injury.)) The Magistrate Judge further noted that "[c]ourts are generally unwilling to determine that an inmate's injury is work-related absent evidence that the injury occurred during

8

work activities, on the work site, or while the inmate was 'on-the-clock.'" (PF&R at 8) (citing *Goforth v. United States,* 2010 WL 3835541 (S.D.W.Va. 2010) (J. Faber) (denying motion to dismiss where there was "some evidence in the record to support [Plaintiff's] contention that she was going to her job site at the time of her accident"); *Codianni-Robles v. United States,* 2005 WL 2098837, at *2 (D.Conn. 2005) (court denied government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.")).

Based upon his review of the record, the Magistrate Judge found that Plaintiff's injury was "work related." (PF&R at 9-10.) He noted that Plaintiff testified that on the morning of his injury he reported for work as the head cook in the prison cafeteria around 4:45 a.m. (*Id.* at 9) (citing Document 21-3 at 6-7.) Plaintiff further testified that around 7:00 a.m., his work supervisor instructed him to return to his housing unit "and wait to be called back down" because the supervisor was being called away and "didn't have anybody to relieve him at the kitchen." (*Id.*) (citing Document 21-3 at 6-7.) Plaintiff explained that security procedure required him to return to his cell because inmates are not allowed to be in the kitchen unsupervised. (*Id.*) (citing Document 21-3 at 7 and 15) (*see also,* Document 21-1 at 1.) Approximately thirty minutes later, Plaintiff was returning to the kitchen as instructed when he slipped and fell on the gravel pathway injuring his knee. (*Id.*) (citing Document 21-3 at 7) (*see also,* Document 21-2 at 1.) The Magistrate Judge noted that in his Declaration, James Pitts, Safety Manager at FCI Beckley, stated that "[t]he injury report noted that [Plaintiff's] job assignment was as a cook working from 4:30 a.m. until 12:30 p.m. on February 4, 2010." (*Id.*) (quoting Document 21-1 at 1.)

9

The Magistrate Judge found that the record reveals that Plaintiff's work supervisor instructed him to leave the kitchen and to return when notified. (*Id.* at 10.) The Magistrate Judge found that "[i]t is undisputed that Plaintiff was 'on-the-clock' and being paid while he was temporarily away from the kitchen." (*Id.*) Therefore, he concluded that Plaintiff's injury was "work-related." (*Id.*) (citing *Baynes,* 302 Fed.Appx. at 335-36; *Payton,* 2001 WL 3240487, at *3.) Contrary to Plaintiff's contention, the Magistrate Judge found that this case is factually distinct from *Goforth* because "there was no indication that Ms. Goforth was 'on-the-clock' at the time of her injury or that she was instructed by her work supervisor to leave and return to a specific work area." (*Id.*) (citing *Goforth,* 2010 WL 3835541.) The Magistrate Judge also noted that although the Health Service Clinical Encounter report indicates that the injury was not "work-related" (Document 24 at 16), those statements "are not conclusive as to whether the plaintiff's injuries were work-related under the governing regulations." (PF&R at 10) (quoting *Codianni-Robles,* 2005 WL 2098837, at *2.) Based on the foregoing, the Magistrate Judge found that Plaintiff's injury was "work-related," and thus, covered by the IACA.  Accordingly, he recommended that the Court grant the United States' Motion for Summary Judgment. (*Id..*)

### ii.    *Negligence*

The Magistrate Judge also found that the United States cannot be held liable under the FTCA because "the icy conditions of the gravel pathway was open and obvious and Plaintiff failed to exercise ordinary care in discovering the icy conditions" and a landowner has no duty to remove snow and ice during the progress of a snowstorm. (*Id.* at 13-17.) Moreover, even if staff at FCI Beckley did have such a duty, they "did not breach the duty to use care in the maintenance of the premises." (*Id.* at 17-18.) He noted that "the mere happening of an accident is legally insufficient

10

to establish liability." (*Id.* at 13) (quoting *McMillion v. Selman,* 193 W.Va. 301, 303, 456 S.E.2d 28, 30 (1995)). Instead, there must be evidence that the United States owed a duty of care to Plaintiff and breached it through some act or omission, thereby causing a reasonably foreseeable injury. (*Id.*) In *Mallet v. Pickens,* 206 W.Va. 145, 446-47, 522 S.E.2d 436 (1999), the West Virginia Supreme Court of Appeals noted that:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?
> . . . .
> We hold that, in determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

(*Id.*)

The Magistrate Judge also noted that with respect to a landowner's duty to remove snow and ice from his premises, he should "use due and proper care to see that sidewalks are reasonably safe for persons exercising ordinary care and prudence." (PF&R at 14) (quoting *Eichelberger v. United States,* 2006 WL 533399 (N.D.W.Va. 2006) (citing *Walker v. Memorial Hospital,* 187 W.Va. 5, 12, 45 S.E.2d 898, 901-02 (1948)). He recognized that "[t]he mere slipperiness of a sidewalk, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city [or other landowner] liable for damages occasioned thereby." (*Id.*) (quoting *Eichelberger,* 2006 WL 533399, at *3.) A "foot-traveler" is *required* to exercise increased care in icy conditions. (*Id.*) (quoting *Eichelberger,* 2006 WL 533399, at *3.) The Magistrate Judge stressed that because a person lawfully on the premises of

11

another assumes all "normal, obvious or ordinary risks attendant on the use of the premises," the owner/occupier will not be liable for injuries sustained as a result of dangers which are "obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." (PF&R at 14) (quoting *Estate of Helmick v. Martin,* 192 W.Va. 501, 505, 453 S.E.2d 335, 339 (1994) (quoting *Burdette v. Burdette,* 127 S.E.2d 249, 252 (W.Va.1962)).

The Magistrate found that there are no genuine issues of material fact in this case. (PF&R at 14-15.) He recited the material facts as follows. At approximately 4:45 a.m., on February 4, 2010, Plaintiff walked from his housing unit to the kitchen where he worked as the head cook. (Document 21-3 at 6-7.) It had been snowing for days and there was "a lot of snow on the ground," approximately two and a half feet. (*Id.* at 15.) The sidewalks were treated at approximately 5:00 a.m., "prior to everybody coming out to breakfast," which is at 6:00 a.m. (*Id.* at 17.) At approximately 7:00 a.m., Plaintiff was instructed to return to his housing unit, and did so using the sidewalk. (*Id.* at 17-18.) Plaintiff "almost slipped and fell two or three times going up the sidewalk where they had melted the ice" because "[t]he water had ran down the sidewalk and it re-froze back." (*Id.* at 7, 18.) Approximately thirty minutes later, Plaintiff was instructed to return to the kitchen. (*Id.* at 18.) Plaintiff took the gravel pathway back to the kitchen because he "had trouble getting up the sidewalk" and felt that the gravel pathway was "a safer route" because it "starts off at a slight incline but then levels off." (*Id.*) Plaintiff took the gravel pathway even though he knew that "the sidewalk is shorter than the [gravel] path if you're going to the kitchen" and the gravel pathway had not been treated. (*Id.* at 13 and 15-16.) Plaintiff stated that the snow on the gravel pathway had been stomped down to approximately two or three inches. (*Id.* at 15-16.) Plaintiff slipped and fell on the gravel pathway injuring his knee. (*Id.* at 7.)

Based on the foregoing, the Magistrate Judge found that "the undisputed evidence indicates that the weather conditions were changing on the morning of February 4, 2010." (*Id.* at 15-16) (citing Document 23-1 at 16-20.) The Magistrate emphasized that Plaintiff stated that "it was snowing all that morning." (Document 23-1 at 16.) Plaintiff further stated that the BOP had cleared and treated the sidewalk at 5:00 a.m., but that by 7:00 a.m. the melted ice had refrozen. (*Id.* at 7, 17-18.) Plaintiff was aware of the icy conditions on the sidewalk because he returned to his housing unit using the sidewalk at approximately 7:00 a.m. (*Id.*) Approximately thirty minutes later, Plaintiff chose to take the snow covered gravel pathway which had not been treated. (*Id.* at 15-16, 18.) Therefore, the Magistrate concluded that "it was at least as foreseeable to Plaintiff, who had traveled on the treated sidewalk and knowingly chose to travel on the untreated gravel pathway, as it was foreseeable to the staff at FPC [Beckley] that the premises could be icy." (PF&R at 16.)

Assuming that the sidewalk and gravel pathway were covered in ice, the Magistrate Judge found that Plaintiff did not exercise ordinary care under the circumstances. (PF&R at 16.) He noted that Plaintiff knew that it had snowed overnight and that there was a lot of snow on the ground in the morning. (Document 23-1 at 7 and 15-16.) Moreover, Plaintiff had traveled between his housing unit and the kitchen twice approximately two and a half hours before his injury. (*Id.* at 17-18.) Plaintiff described the gravel pathway the morning of his accident as being untreated and covered in snow, "maybe two or three inches" where it had been stomped down. (*Id.* at 16.) Therefore, the Magistrate Judge found that Plaintiff's own statements indicate that the condition of the gravel pathway was obvious. (PF&R at 16.) He also noted that there is no evidence that any other inmate slipped and fell on the gravel pathway due to the icy conditions that morning. (*Id.* at

13

17.) Therefore, the Magistrate Judge found that "the icy condition of the gravel pathway was open and obvious and Plaintiff failed to exercise ordinary care in discovery of the icy conditions." (PF&R at 17) (citing *Eichelberger,* 2006 WL 533399, at *3.)

He also found that the "icy condition of the walkways was the result of continuous snow." (PF&R at 17) (citing *Phillips v. SuperAmerica Group, Inc.,* 852 F.Supp. 504, 506 (N.D.W.Va. 1994) (holding that a gas station owner had no duty to remove snow and ice from premises during pendency of snowstorm, and therefore, was not liable to invitee for the injuries he sustained in the fall). Therefore, he concluded that prison staff at FCI Beckley owed no duty to Plaintiff to remove the snow and/or ice from the gravel pathway during the pendency of the storm. (*Id.*)

Moreover, even if prison officials did owe Plaintiff such a duty, the Magistrate Judge found that they "used reasonable care under the circumstances in their maintenance of the sidewalks." (PF&R at 17.) He noted that Plaintiff acknowledged that the BOP "clear[s] the sidewalk prior to breakfast" and "make[s] sure all the snow is off of it" before they allow inmates out of their housing units. (Document 21-3 at 16-17.) Moreover, Plaintiff recognized that "[t]hey clear [the sidewalk] periodically through the day . . . [u]sually when people are going to be moving back and forth." (*Id.* at 17-18.) The Magistrate Judge noted that the evidence indicates that the sidewalks were cleared of snow and treated with salt prior to Plaintiff's injury. (PF&R at 17) (citing Document 21-3 at 17-18.) However, Plaintiff admitted that he independently chose to take the gravel pathway to the kitchen even though he knew that, unlike the sidewalk, it was untreated. (*Id.* at 16-17, 19.) The Magistrate Judge concluded that the staff at FCI Beckley did not breach their duty of care. (PF&R at 17-18.)[2] Therefore, the Magistrate Judge found that the United States

---

2 In making this finding, the Magistrate Judge considered the *Mallet* factors –the foreseeability to the staff at FCI Beckley and Plaintiff that Plaintiff's injuries would occur; the nature of Plaintiff's injuries; the time, manner and

cannot be held liable under the FTCA. (*Id.*) Accordingly, he recommended that the Court grant the United States' Motion for Summary Judgment. (*Id.*)

### B. *Plaintiff's Objections*

On August 9, 2013, Plaintiff submitted his objections to the Magistrate Judge's PF&R (Document 29), wherein he "objects to the Magistrate's Recommendation in its entirety and requests a de novo review of this case." (*Id.* at 2.)   He also submitted two specific objections to the PF&R.   First, Plaintiff objects to the Magistrate's finding that his accident is covered by the Inmate Accident Compensation Act. (*Id.* at 3-4.) He writes:

> Contrary to the Magistrate's proposed findings, the instant case is strikingly similar to the matter presented to this Honorable Court in <u>Goforth v. United States,</u> 2010 WL 3835541 (S.D.W.Va. Sept. 29, 2010). Therein, an inmate was working on a cottage maintenance detail when an officer instructed her to return to her cell for security reasons. As with the instant matter, it was during the inmate's return to the worksite that she fell and sustained an injury. As in <u>Goforth,</u> the Plaintiff contends that he was going to the job site at the time of the accident and there is some evidence in the record to support his contention.

(*Id.* at 4.)

Second, Plaintiff objects to the Magistrate Judge's finding that staff at FCI Beckley was not negligent. (*Id.* at 4-5.) Plaintiff writes:

> The Magistrate's finding with respect to the negligence of BOP staff to provide at least one walkway free of obstruction whereby the Plaintiff could safely walk to his place of work are not conducted in the light most favorable to the Plaintiff. Accordingly, the Plaintiff objects to same.
>
> In light most favorable to the Plaintiff, a jury could find that, while it had been snowing all morning on the day in question, it was not snowing between 5:00 a.m. and 7:00 a.m. The jury could further find that the BOP staff were therefore negligent whereas (1) staff knew the walkway had no drainage system and failed to correct the defect, thereby allowing water to accumulate on the sidewalks and freeze into a sheet of ice- an impossible obstruction, and (2) staff failed to clear a

circumstances under which his injuries occurred; and the intended use of the premises where Plaintiff was injured – and Plaintiff's responsibility to exercise reasonable care under the circumstances. (*Id.* at 18.)

single obstruction–free path from the buildings to the dining facility while forcing
the inmate to transverse the unsafe walkway by threat of punishment.

(*Id.*)

### C. Court's Findings

The Court notes that Plaintiff is acting *pro se,* and thus, has liberally construed his
pleadings. *Estelle*, 429 U.S. at 106; *Loe*, 582 F.2d at 1295. Nevertheless, after careful review and
consideration, the Court finds that Plaintiff's objections are without merit and should be overruled.

First, Plaintiff argues that his injury was not work related based on the holding in *Goforth,*
a case he contends is factually similar to his own. (Document 29 at 3-4.) In *Goforth,* a female
inmate at a federal prison camp was "working cottege [sic] maintance [sic] cleaning the showers"
when an officer called for a "census count." *Goforth,* 2010 WL 3835541, at *2. The workers left
the shower area to go to their housing cubes. (*Id.*) "After [the] count was completed, [she] came
out of [her] cube to return to the shower area to finish cleaning" and slipped and fell. (*Id.*) The
court noted that Ms. Goforth "contends that she was going to her job site at the time of her accident
and there is some evidence in the record to support her contention. (*Id.* at * 3.) Therefore, the court
found that the United States' motion to dismiss based on the IACA should be denied because the
United States had not conclusively shown that Ms. Goforth's injury was work-related. (*Id.*)

The Court finds that Plaintiff's objection should be overruled because the instant case is
factually distinct from *Goforth* and there is no genuine issue that Plaintiff's injury was work
related. The undisputed evidence in this case indicates the following: (1) On the day of Plaintiff's
accident, he was scheduled to work from 4:30 a.m. until 12:30 p.m. (Document 21-1 at 1); (2)
Around 7:00 a.m., his supervisor was called away from the kitchen and for security reasons
instructed Plaintiff to return to his housing unit "and wait to be called back down." (Document

16

21-3 at 6-7); (3) Approximately thirty minutes later, he was instructed to return to the kitchen, and on his way back, he slipped and fell injuring his knee. (*Id.* at 7); and (4) Plaintiff was "on-the-clock" and being paid during the time of his injury. (Document 21-3 at 6-7.)   On the other hand, there is no indication that Ms. Goforth's supervisor instructed her to leave the work area and to return when notified because he had somewhere else to be or that she was "on-the-clock" and being paid during the time of injury. (*Goforth,* 2010 WL 3835541, at *1-3.) Therefore, the Court finds that Plaintiff's objection should be overruled.

Second, Plaintiff contends the Magistrate did not view the facts in the light most favorable to him and erred in his finding that the BOP staff was not negligent. (Document 29 at 4-5.) Liberally construing his objection, it appears that Plaintiff is challenging the Magistrate Judge's finding that staff at FCI-Beckley had no duty to remove ice or snow during the pendency of a storm because viewing the facts in the light most favorable to him, he could have found that it was not snowing between 5:00 a.m. and 7:00 a.m. (*Id.*at 4.) Therefore, Plaintiff is presumably implying that staff at FCI Beckley could have cleared the walkways during that time. (*Id.*) However, Plaintiff does not cite to any material in the record to support his contention that it was not snowing between 5:00 a.m. and 7:00 a.m. To defeat a properly supported motion for summary judgment, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. In other words, he "must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v,* No. 2012 WL 2130908, at *3 (quoting *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). Plaintiff has not done so here. Plaintiff testified that it snowed "a lot" the day before his accident and "[i]t snowed extensively that night." (Document 23-1 at 7, 20.) He further

testified "it was snowing all morning" the day of his accident and that there was "a lot" of snow on

the ground. (*Id.* at 16) He explained that "it had been snowing for I don't know how many days [-]

I mean it had been snowing for a while" and that in some spots the snow was two and a half feet

high. (*Id.* at 15.) Viewing the underlying facts in the light most favorable to Plaintiff and drawing

reasonable inferences from those facts in his favor, the Court finds that his accident took place

during the pendency or progress of a snowstorm. *Matsushita*, 475 U.S. at 587-88. Therefore, staff

at FCI Beckley had no duty to remove the snow or ice from the premises at that time. *Phillips v.

SuperAmerica Group, Inc.,* 852 F.Supp. 504, 506 (N.D.W.VA. 1994) ("the Court finds that it is

reasonable, and the exercise of ordinary care, for the landowner to wait until the end of a

snowstorm before removing the snow and ice from his premises.") Nevertheless, according to

Plaintiff's testimony, the BOP did remove the snow from the sidewalk and treat it with salt at

approximately 5:00 a.m. that morning. (Document 21-3 at 7, 9 and 17.) Therefore, the Court finds

that Plaintiff's objection should be overruled.

　　　　Further, Plaintiff appears to be challenging the Magistrate Judge's finding that staff at FCI

Beckley was not negligent in failing to remove the snow and ice from the walkways. (*Id.*) Plaintiff

argues that a jury could find that the BOP staff was negligent because they "knew the walkway had

no drainage system and failed to correct the defect, thereby allowing water to accumulate on the

sidewalks and freeze into a sheet of ice - an impossible obstruction and . . . failed to clear a single

obstruction–free path from the buildings to the dining facility while forcing the inmate to

transverse the unsafe walkway by threat of punishment." (*Id.* at 4-5.)

　　　　In West Virginia, in order to prevail in a negligence action, the plaintiff must establish

three elements: "(1) A duty which the defendant owes to him; (2) A negligent breach of that duty;

18

(3) Injuries received thereby, resulting proximately from the breach of that duty." *Bullington v. Lowe's Home Centers, Inc.*, 2011 WL 3843929 (S.D.W.Va. 2011) (quoting *Webb v. Brown & Williamson Tobacco Co.,* 2 S.E.2d 898, 899 (W.Va.1939)). With respect to the first element, a landowner owes a duty to an invitee to exercise ordinary care in keeping and maintaining the premises in a reasonably safe condition. *Burdette v. Burdette,* 147 W.Va. 313, 127 S.E.2d 249, 252 (W.Va. 1962.) However, the duty "applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care." (*Id.*) (quoting 65 C.J.S. Negligence § 50.) This is so because "[t]he invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." (*Id.*)   Therefore, in West Virginia, a landowner is not liable for injuries sustained as a result of dangers that are "obvious, reasonably apparent, or as well known to the person injured as they are to the owner." (*Id.*)

The Court finds that Plaintiff, by his own admissions, knew of the icy condition of the walkways which was open and obvious. Plaintiff testified that there was "a lot" of snow on the ground because "it was snowing all morning" and it had snowed "extensively" the night before. (Document 23-1 at 7, 16, 20.)  He also testified that although the sidewalk had been cleared around 5:00 a.m., approximately two hours later, on his way back to his housing unit, he "almost slipped and fell two or three times going up the sidewalk where they had melted the ice" because "the water had ran down the sidewalk and it re-froze back." (*Id.* at 7, 18.) He explained that "[w]hen they clear the sidewalk prior to breakfast, they make sure all the snow is off of it, but the water runs down the sidewalk because they don't have any drainage so you've got little streams of

19

water coming down the sidewalk." (*Id.* at 16.) Based on his testimony, it is clear that Plaintiff knew of the obvious icy condition of the sidewalk. The staff at FCI Beckley was under "no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." *Burdette,* 127 S.E.2d at 252.  Plaintiff's testimony further indicates that he knew the gravel pathway had not been treated and was covered in snow. (Document 23-1 at 7, 15-16.) He stated that there was "maybe two or three inches" of snow on the gravel pathway where people had "stomped it down." (*Id.* at 16.) Thus, the icy condition of the gravel pathway was also open and obvious. Nevertheless, Plaintiff chose to take the longer route to the kitchen by walking on the snow covered gravel pathway. (*Id.* at 13, 15-16.) The Court stresses that a "foot-traveler" is required to exercise increased care in icy conditions. *Eichelberger,* 2006 WL 533399, at *3. There is no evidence that anyone else slipped and fell on the gravel pathway due to icy conditions that morning. Therefore, given the totality of the undisputed evidence, the Court concludes that Plaintiff failed to exercise due care with regard to the open and obvious icy condition of the gravel pathway. Because the icy condition of the gravel pathway was open and obvious, no proof of negligence has been established against the Defendant. *Burdette,* 127 S.E.2d at 252. Moreover, as noted above, a landowner does not have a duty to remove snow or ice during the pendency or progress of a snowstorm. *Phillips,* 852 F.Supp. at 506. Based upon the foregoing, the Court finds that Plaintiff's objection should be overruled. (*Id.* at 4.)

### *CONCLUSION*

WHEREFORE, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 27), granting the United States' Motion for Summary Judgment and dismissing Plaintiff's Complaint, be **ADOPTED** and that Plaintiff's objections to

the PF&R (Document 29) be **OVERRULED.**   Furthermore, the Court **ORDERS** that the United States' Motion for Summary Judgment (Document 21) be **GRANTED** and that Plaintiff's Complaint (Document 1) be **DISMISSED**, and that this matter be **REMOVED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.


ENTER:          September 3, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA